IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68094-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JOHN RAY LOMACK, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 4, 2013 |

SCHINDLER, J. — John Ray Lomack appeals his conviction for possession of cocaine. Lomack argues the trial court erred in denying his motion to suppress the evidence found during the search incident to arrest. We affirm.

While on bicycle patrol in downtown Seattle on November 10, 2010, Seattle Police Officer Juan Tovar saw John Ray Lomack walking near the King County Courthouse. Officer Tovar recognized Lomack from a previous arrest "[not] more than a year" before. At the time of the previous arrest, Lomack was under the supervision of the Department of Corrections (DOC) in Moses Lake. DOC told Officer Tovar that Lomack was prohibited from going to Seattle and instructed Officer Tovar that if he ever saw Lomack in Seattle, he was to stop Lomack and contact DOC.

Accordingly, when Officer Tovar saw Lomack on November 10, he stopped him and said, " 'Mr. Lomack, you're not supposed to be here in Seattle.' " In response,

Lomack told Officer Tovar that he was "just walking through." Officer Tovar repeated, "[H]ey, you're aware that you're not supposed to be down here [in] Seattle, at all, period."

Officer Tovar then contacted DOC Community Corrections Officer (CCO) Brooks Raymond[1] and told him he had stopped Lomack in downtown Seattle. Raymond confirmed Lomack was still on active supervision, he was not permitted to be in Seattle, and instructed Officer Tovar to place Lomack under arrest.

Officer Tovar arrested Lomack. During a search incident to arrest, Officer Tovar found two pieces of crack cocaine and a crack pipe in Lomack's pockets.

The State charged Lomack with possession of cocaine. Lomack filed a motion to suppress the evidence seized during the search. Lomack argued the search was unlawful because Officer Tovar did not have reasonable cause to stop him. Lomack claimed that Officer Tovar's information that he was not permitted to be in Seattle was possibly up to a year old and therefore "stale."

At the suppression hearing, the deputy prosecutor asked Officer Tovar whether "more than a year had passed" since the time of the prior arrest. Officer Tovar did not know the exact date of the previous arrest but remembered clearly that it had not been more than a year. Officer Tovar specifically recalled that the prior arrest involved Lomack's DOC conditions and that he was told to stop Lomack if he saw him again in downtown Seattle. "And so we were told that - or at least I was told that if we were to

---

[1] Raymond monitors offenders on active DOC supervision.

2

see [Lomack] in downtown Seattle again, that we were to stop him and that DOC needed to be contacted because he was not supposed to be in Seattle."

The trial court denied the motion to suppress on the grounds that Officer Tovar had reasonable cause to stop Lomack. The court entered written findings of fact and conclusions of law. The conclusions of law state, in pertinent part:

> 1. Whether the information relied on by an officer in stopping the defendant was stale or not is dependent on the reasonableness of the subjective intent of the officer conducting the stop.
> 2. The applicable case law does not require that the officer be correct that the DOC conditions of conduct justifying a stop are still in effect, just that the belief be reasonable.
> 3. Office [sic] Tovar had a reasonable belief that the DOC condition prohibiting the defendant from being in Seattle was in effect on November 10, 2010 based on his prior arrest of the defendant not more than a year earlier.
> 4. That when Officer Tovar stopped the defendant, questioned him, and called DOC, defendant had been seized and was not free to leave.

Officer Tovar, CCO Raymond, and a forensic scientist from the Washington State Patrol Crime Laboratory testified at trial. The jury convicted Lomack of possession of cocaine.

On appeal, Lomack argues that the trial court erred in denying his motion to suppress. Lomack asserts that because Officer Tovar did not have reasonable cause to stop him, the cocaine was inadmissible.

We review a trial court's decision on a motion to suppress to determine whether the findings are supported by substantial evidence and whether those findings, in turn, support the conclusions of law. State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003). Where, as here, the findings are not challenged, they are verities on appeal.

3

No. 68094-3-I/4

O'Neill, 148 Wn.2d at 571. We review conclusions of law de novo. State v. Johnson, 128 Wn.2d 431, 443, 909 P.2d 293 (1996).

The Fourth Amendment of the United States Constitution and article I, section 7 of the Washington State Constitution prohibit unreasonable searches and seizures. State v. Williams, 102 Wn.2d 733, 736, 689 P.2d 1065 (1984). Absent an exception to the warrant requirement, a warrantless seizure is per se unreasonable. State v. Doughty, 170 Wn.2d 57, 61, 239 P.3d 573 (2010). If the initial seizure is unlawful, the subsequent search and fruits of that search are inadmissible. State v. Kennedy, 107 Wn.2d 1, 4, 726 P.2d 445 (1986).

Individuals on probation or other types of community supervision have a diminished right of privacy. State v. Lampman, 45 Wn. App. 228, 233, 724 P.2d 1092 (1986). In State v. Campbell, 103 Wn.2d 1, 691 P.2d 929 (1984), our supreme court recognized the right to search a probationer if the police or probation officer has reasonable cause to believe that an offender has violated a condition or requirement of the sentence. Campbell, 103 Wn.2d at 22. This exception is codified in former RCW 9.94A.631(1) (2009),[2] which states:

> If an offender violates any condition or requirement of a sentence, a community corrections officer may arrest or cause the arrest of the offender without a warrant, pending a determination by the court or a department of corrections hearing officer. If there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, a community corrections officer may require an offender to

---

[2] The legislature amended RCW 9.94A.631(1) in 2012 to replace "a department of corrections hearing officer" with "by the department." LAWS OF 2012, 1st Spec. Sess., ch. 6, § 1.

4

submit to a search and seizure of the offender's person, residence, automobile, or other personal property.

We review de novo whether the facts surrounding a police encounter amount to a seizure. State v. Rankin, 151 Wn.2d 689, 694, 92 P.3d 202 (2004). A seizure occurs when, "considering all the circumstances, an individual's freedom of movement is restrained and the individual would not believe he or she is free to leave or decline a request due to an officer's use of force or display of authority." Rankin, 151 Wn.2d at 695. Whether police action is a seizure is determined by looking objectively at all the actions of the officer as well as the interaction between the individual and the officer. State v. Young, 135 Wn.2d 498, 501, 957 P.2d 681 (1998); O'Neill, 148 Wn.2d at 575.

The trial court found that the seizure occurred when Officer Tovar "stopped the defendant, questioned him, and called DOC." Lomack and the State dispute the meaning of the unchallenged finding. The State argues that Lomack was not seized until Officer Tovar stopped Lomack, questioned him, and confirmed that he was still on active supervision. Lomack claims that the seizure occurred prior to receiving authorization from DOC to arrest him.

We conclude the record shows that Lomack was seized prior to receiving authorization from DOC. When an officer communicates his belief that lawful grounds exist to detain an individual, a reasonable person in that individual's position would not feel free to leave. State v. Barnes, 96 Wn. App. 217, 223, 978 P.2d 1131 (1999). Officer Tovar initiated contact with Lomack based on the previous instructions from DOC to stop Lomack if he was in Seattle. When Officer Tovar approached Lomack, he

5

told him that he was not supposed to be in Seattle. After Lomack said he was just "walking through," Officer Tovar emphasized that Lomack was not supposed to be in downtown Seattle at all. Based on the interaction between Officer Tovar and Lomack, a reasonable person would not have felt free to leave.

Lomack asserts that the seizure was unlawful because Officer Tovar did not have reasonable cause to believe he was in violation of the conditions of his probation. Lomack claims that absent confirmation from the CCO that Lomack was in violation of the conditions of probation, Officer Tovar did not have reasonable cause to stop him. Lomack also argues that Officer Tovar's information that Lomack was not supposed to be in Seattle was stale.

An officer may conduct a warrantless seizure of an offender on community supervision if he has "reasonable cause to believe" the offender is violating the conditions of his supervision. RCW 9.94A.631. The "reasonable cause" standard is similar to the "reasonable suspicion" standard required for a Terry[3] stop. State v. Parris, 163 Wn. App. 110, 119, 259 P.3d 331 (2011). A suspicion is reasonable when based on specific and articulable facts and the rational inferences drawn from those facts. Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). A reasonable suspicion requires only sufficient probability, not absolute certainty. New Jersey v. T.L.O., 469 U.S. 325, 346, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985).

---

[3] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

The unchallenged findings support the conclusion that Officer Tovar had reasonable cause to believe Lomack was in violation of the condition of supervision. Officer Tovar had previously arrested Lomack within the past year. At the time of the previous arrest, Lomack was on DOC supervision and was not permitted to be in downtown Seattle, and DOC told Officer Tovar to stop Lomack if he ever saw him again in Seattle. When Officer Tovar stopped Lomack on November 10, 2010, Lomack did not deny that he was prohibited from being in downtown Seattle. Instead, Lomack said that he was just "walking through."

Lomack also argues that because Officer Tovar could not pinpoint exactly when he previously arrested Lomack, the information Officer Tovar had was "stale." But the unchallenged findings establish that although Officer Tovar could not recall exactly when the prior arrest occurred that year, he specifically recalled that Lomack was prohibited from being in downtown Seattle and that DOC told him to stop Lomack if he saw him again. As the trial court points out, "case law does not require that the officer be correct that the DOC conditions of conduct justifying a stop are still in effect, just that the belief be reasonable." Based on the prior arrest, Officer Tovar had a reasonable

7

No. 68094-3-I/8

cause to believe Lomack was violating the conditions of his DOC supervision.

We affirm the decision to deny the motion to suppress.

WE CONCUR:

_Schindler, J._

_Spearman, A.C.J._

_Cox, J._